**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

STEVEN REED, et al,

      Plaintiffs,

vs                                 Case No: 10-13247
                                       Honorable Victoria A. Roberts

NETHERLANDS INSURANCE COMPANY,

      Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendant Netherlands Insurance Company's Motion for

Summary Judgment (Doc. #30).  Plaintiffs filed suit for declaratory relief; they seek

coverage under a cemetery's insurance policy for an allegedly misplaced body.  The

Court finds the policy does not cover any of the Plaintiffs' claims.

The policy was effective December 22, 2006 until November 25, 2007.  Plaintiffs

did not discover the alleged mistake until March 11, 2009.  The cemetery says the body

was never lost; paperwork was misplaced, and the burial took place on August 10, 2007

as scheduled, in the lot the Plaintiffs purchased.

Plaintiffs' underlying state court complaint ("Verified Complaint") alleges breach

of contract, negligence, intentional infliction of emotional distress, violation of the

Michigan Consumer Protection Act, and fraud.  As a result, Plaintiffs say they have

1

suffered mental anguish, loss of use of attendant property, and interference with the right of burial of human remains.  Lastly, Plaintiffs say there is a conflict between the Endorsement and Exclusion provisions of the policy, and that this ambiguity must be resolved in their favor.

Netherlands denies coverage.  It says Plaintiffs' claims – if they exist – occurred outside of the policy period and even if they are timely, policy exclusions bar coverage.

The Motion for Summary Judgement is **GRANTED.**  Netherlands' request for costs is **DENIED**.

## II.    FACTS

Steven Reed, Kresha Rhan, Ezra Bolden, Cholon Bolden, and Phaedra Bolden ("Plaintiffs'") are the children of deceased, Katherine Bolden.  Plaintiffs say the United Memorial Gardens Cemetery ("Cemetery"), a cemetery corporation, misplaced their mother's remains.  Plaintiffs filed suit in Wayne Circuit Court on February 12, 2010 against the Cemetery, Mikocem LLC, aka Mikocem, Inc., ("Mikocem") and Midwest Memorial Group, LLC.  Mikocem is a limited liability company that formerly owned the Cemetery.  Midwest Memorial Group is also a limited liability company and is the current owner of the Cemetery.  Plaintiffs' underlying state lawsuit is against the Cemetery, Mikocem, and Midwest Memorial Group.  In an unrelated action, Indiana Insurance was ordered to change its name to The Netherlands Company ("Netherlands").

Plaintiffs entered into a burial contract with the Cemetery on August 7, 2007, to bury their mother in Section Rose Gardens I, Lot 2A, Space 3.  She was to be interred

in that plot around August 10, 2007.  The Plaintiffs allege that they were not allowed to

see their mother interred, but do not explain why.  The Plaintiffs did not attend the

funeral and had no contact with the Cemetery until a year and a half later.   Around

March 11, 2009, Plaintiffs contacted the Cemetery to make arrangements to bury their

sister next to her mother.  Plaintiffs allege they were told their mother was not buried

there, but if she was, she was in a different plot.  Plaintiffs also say an agent of the

Cemetery informed them that a former employee had taken client money and disposed

of bodies in unknown locations.  The Cemetery says it located Katherine Bolden's body

after the Plaintiffs filed suit, in the plot purchased by the family.

 Netherlands claims the Cemetery misplaced paperwork only; the body was

never actually missing.  In a letter dated May 14, 2009, the Cemetery said its records

indicate Katherine Bolden was buried in the space Plaintiffs reserved, on the day she

was to be buried.  Although Bolden's file could not be located, the Cemetery says the

burial was recorded in two other places: (1) the grounds superintendent's paperwork,

and (2) the Cemetery's burial log book.  Even though the burial log book shows Bolden

was buried in the plot her family bought, a separate book, the Cemetery lot book, shows

that Bolden's space had already been sold to someone else at the time Plaintiffs

purportedly purchased it; that is why the family was told the decedent was buried in

someone else's space.

## III.    GENERAL DESCRIPTION OF POLICY

### A.    Coverage

In determining Coverage, the Court reviewed the declarations, insuring

agreement, conditions and definitions sections of the policy ("Coverage").   Under

3

Coverage, the insurer agrees to pay damages resulting from "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence" during the policy period.

### B.     Exclusion

Despite the language in the Coverage section, the policy contains a Funeral Services Exclusion ("Exclusion").  This states that the insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of errors or omissions in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies.

### C.     Endorsement

 Finally, the insurance policy contains a Funeral Homes or Cemeteries Endorsement ("Endorsement"); this Endorsement modifies the coverage to extend coverage for "bodily injury," including mental anguish claims, and "property damage" arising from the rendering or failure to render professional services by a funeral home or a cemetery.  The Endorsement also modifies coverage to allow recovery for "personal injury" arising out of the interference with the right of burial of human remains.

## IV.    ANALYSIS

Determining coverage here is complicated by several facts.  The policy was in effect December 22, 2006 until November 25, 2007.  While Plaintiffs' decedent was buried during the period of coverage  – on August 10, 2007 – Plaintiffs did not find out she was not in the plot they purchased until March 11, 2009 – outside of the policy period.  A further wrinkle is that Netherlands says were mistakenly told the decedent

4

was not in the plot they purchased; she had been there all along.  Plaintiffs continue to challenge that assertion.  Their so-called mental anguish arises from being given the information that their mother was not in the purchased plot.

## A.    Legal Standard

Summary Judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56.  The moving party bears the initial burden to show an absence of "a genuine issue of material fact as to at least one essential element of Plaintiffs' claim." *Moses v. Providence Hosp. and Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009). Once this burden is met, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party must establish more than a "metaphysical doubt" as to the material facts."  *Id.* at 586.  An issue is 'material' if the "facts alleged . . . constitute a legal defense or are of such nature as to affect the result of the action."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita*, 475 U.S. at 587.

## B.    Applicable Law

Michigan law governs; a federal court sitting in diversity applies the substantive

law of the state in which it sits.  *Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998).  "In general, interpretation of insurance policies is governed by the same principles used to interpret ordinary contracts."  *Cincinnati Ins. Co. v. Zen Design Group*, LTD., 329 F.3d 546, 553 (6th Cir. 2003) (citation omitted).  To determine whether an insured is entitled to insurance benefits, a court must first determine whether the policy provides coverage.  If it does, the court must then determine whether that coverage is negated by an exclusion.  *Heniser v. Frankenmuth Mut. Ins., 449 Mich. 155, 172 (1995).*  The contract should be viewed as a whole, and meaning given to all of its terms.  *Fresard v. Mich. Millers Mut. Ins. Co.*, 414 Mich. 686, 694 (1982).  The burden of showing a claim is not covered under a policy belongs to the insurer.  *Id.*  The issue before the Court is not whether the Plaintiffs' claims have merit, but whether Plaintiffs allege a theory of recovery that falls within the policy.  *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 207 Mich.App. at 66.  The Insurer's duty to defend is determined by the allegations in the complaint.  "The pleading test is based exclusively on the facts as alleged rather than as they are."  *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*,  No. 1:02-CV-231, 2003 WL 23218046, *4 (E.D.Tenn. Dec. 12, 2003).

### C.    The Complaint

To say Plaintiffs' Verified Complaint is confusing, would be an understatement. Negligence and contract allegations are combined into one cause of action.  And, such combined claims appear in more than one Count.  Some counts have redundant claims. For purposes of this Opinion, the Count discusses similar allegations – which means the Court sometimes discusses the allegations of more than one count – together.

6

**D.     No Coverage Under A Contract or Negligence Theory for Cemetery's Failure to Bury the Body in the Right Plot**

In Count I (Contract) and Count II (Negligence) of the Verified Complaint, Plaintiffs allege the Cemetery breached the burial contract and was negligent for failing to bury decedent in the purchased plot.  Netherlands says these claims are barred by the Exclusion.  The Exclusion says:

> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of errors in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies.

The Court finds an allegation that the Cemetery failed to bury Katherine Bolden in the right plot is an alleged error arising out of burial and is barred by the Exclusion.

**E.     No Coverage Under Contract or Negligence Theory for Mental Anguish Arising from Cemetery's Failure to Maintain and Provide Adequate Records**

In Count I (Contract) and Count II (Negligence) of the Verified Complaint, Plaintiffs say they experienced mental anguish as a result of the Cemetery's failure to keep adequate records and for providing the family with misinformation regarding the location of the body.

Plaintiffs' theory of recovery is that under the Endorsement, there is coverage for "bodily injury" including mental anguish, arising from the Cemetery's failure to render professional services.  Netherlands says these claims are barred because Plaintiffs did not discover an alleged error until March 11, 2009 – well outside the policy coverage dates.  Coverage under this theory of recovery hinges on whether the mental anguish occurred within the coverage dates of the policy.

Emotional distress claims generally do not ripen until the plaintiff suffers the

7

emotional distress.  *Commercial Union Assur. Co. PLC, v. Oak Park Marina Inc.*, 198 F.3d 55, 60 (2d Cir. 1999).  Under the circumstances of this case, a plaintiff's claim for mental anguish would not accrue until the plaintiff is actually aware that human remains were mishandled.  *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*, 2003 WL 23218046 at *8.

However, Plaintiffs say their claim is timely because the loss of the body triggered coverage, and the loss occurred within the policy period.  Plaintiffs rely on *Ray Industries, Inc. v. Liberty Mut. Ins. Co.,*, 974 F.2d 754 (6th Cir. 1992), *rev'd on other grounds, Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558 (1994), *overruled by Wilkie v. Auto-Owners Ins. Co.*, 41 Mich. 664 (2003).  *Ray Industries* is an environmental case involving barrel drums of disposed waste that were suspected of contaminating a landfill.  The Court held that each exposure of the pollutant to the environment is an "occurrence" which triggered coverage.  *Id.* at 766.

*Ray Industries* does not help Plaintiffs.  It is specific to environmental damage and does not address when claims for emotional distress damages accrue. Furthermore, the court in *Ray* explicitly noted that it was not establishing "a general rule to apply in all cases."  *Id.*

Netherlands disputes that the loss of the body triggered coverage for emotional distress damages.  Instead, Netherlands says the earliest Plaintiffs could have experienced emotional distress was when they learned of the alleged mishandling on March 11, 2009, which is outside the policy period.  In support, Netherlands cites *Owners Ins. Co. v. Warren Funeral Chapel, Inc.*, No. 10-4182, 2011 WL 2634204 (W.D.Mo. Jul 05, 2011).  In *Owners v. Warren*, plaintiffs accused the funeral home of

8

misplacing human remains, and allowing the body to decompose for almost a year. *Id.* at *2. However, the family did not discover the mistreatment until after the policy had been cancelled. *Id.* at *7. The court granted summary judgment in favor of the insurer, holding that the family did not suffer a "bodily injury" within the policy period because the emotional damage was caused by the realization that the relative was mistreated – something that could not have occurred until the family was aware of the mistreatment. *Id.* at *8.

Netherlands also relies on *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*, 2003 WL 23218046. In *Trinity*, several insurance companies sought declaratory judgment that they were not obligated to defend or indemnify the insured for claims arising out of the alleged mishandling of human remains. The Court found that "the plaintiffs' action for mental anguish . . . could not have accrued until they were actually aware of the mishandling of their decedent's remains." *Id.* at *12.

The Court finds both cases to be persuasive. Furthermore, turning to this policy, it is an "occurrence" policy. It provides coverage only for losses that occur within the policy period. Under the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under an occurrence policy, there can be no coverage for an event which doesn't occur during the policy period. *See Frankenmuth Mutual Ins. Co., Inc. v. Eurich*, 152 Mich.App. 683 (1986) (General liability insurer had no duty to defend because the occurrence fell outside the policy period; the "occurrence" of the negligent act was when the fire occurred and not during construction); *Moss v. Shelby Mutual Ins. Co.*, 105 Mich.App. 671 (1981) (Indemnity provision in effect when deck was built did not cover

9

injuries arising after the policy ended when deck collapsed); *Employers Mutual Liability Ins. Co. of Wisconsin v. Michigan Mutual Auto Ins. Co.*, 101 Mich.App. 697 (1980) (holding that when the negligent act occurs during the policy period but the damages do not occur until after the policy has been cancelled, the insurance policy does not cover the accident).

These caes are persuasive, and the Court finds this theory of recovery under the Endorsement to be unavailing.

Plaintiffs have an additional theory of recovery – that coverage exists under Coverage A of the insuring agreement – for "bodily injury" when mental anguish physically manifests itself in symptoms. This argument lacks merit because Plaintiffs misconstrue the definition of "bodily injury." The operative definition is in Section V of the Commercial General Liability Extension Endorsement. Definition 3 of this section says "bodily injury" is "physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, or death that results from such physical injury, sickness or disease." Under this definition, there is no coverage for mental anguish unless it results from a physical injury. There was no physical injury here.

The Plaintiffs' claim of mental anguish did not accrue until August 11, 2009, the date Plaintiffs discovered that Katherine Bolden's body had allegedly been misplaced. This date is outside the effective dates of the policy, and, Netherlands is not obligated to provide coverage.

> **F.    No Coverage Under A Breach of Contract Theory for "Property Damage" Arising from Cemetery's Failure to Maintain and Provide Records**

10

Plaintiffs' breach of contract theory under Count I of the Verified Complaint is that there is coverage for "property damage" arising out of the Cemetery's failure to render professional services. Plaintiffs say that as a result of the breach, Netherlands is legally obligated to pay property damages for the loss of use of the burial lot, burial vault, internment rights, perpetual care of gravesite, and services which they paid for and did not receive.

Netherlands says this property claim fails because: (1) the Exclusion bars coverage; (2) a cause of action did not accrue until the family learned of the alleged misplacement; (3) the body was never misplaced; (4) policy provisions  j(6) and m(2) exclude coverage; and (5) recovery for breach of the burial contract is limited to one hundred dollars.

Definitions section 17 says "property damage" is:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Plaintiffs' alleged property damage claim arose when the family learned of the alleged mishandling.  Under the policy definition of "property damage," all such loss of use is deemed to occur at the time of the "occurrence" that caused it.  The policy defines "occurrence" as an "accident."  The accident alleged in the Verified Complaint, is the misplacement of the body.  Plaintiffs say, without pinpointing a date, that beginning on the day the body was allegedly misplaced, they lost use of the burial vault.

Even if this alleged loss accrued during the policy period, Netherlands says that

11

there are exclusions in the policy which bar coverage.  The Court agrees that m(2) does

indeed, bar coverage:   Exclusion m(2) is located in Coverage A:

> Exclusions – this insurance does not apply to:
>
> m.    Damage to Impaired Property or Property Not Physically Injured
>
> > (2)    A delay or failure by you (Cemetery) or anyone acting on your
> > behalf to perform a contract or agreement in accordance with its
> > terms.

Netherlands is correct that Provision m(2) excludes coverage.  Under m(2), there

is no coverage under the policy for a delay or failure by the Cemetery to perform a

contract.  Therefore, Plaintiffs' property damage claims arising out of the alleged breach

of the burial contract are barred because the policy does not provide coverage for

instances in which the Cemetery breaches a contract or agreement.

Since Provision m(2) is outcome determinative, the Court does not address the

applicability of provision j(6).

### G.    No Coverage Under A Negligence Theory for Property Damage Arising from Cemetery's Failure to Maintain and Provide Adequate Records

The Court turns to Plaintiffs' nearly identical property damage claim under Count

II.  Plaintiffs' theory of recovery here is that Plaintiffs lost the use of the burial vault

because the Cemetery was negligent and sold the Plaintiffs a burial plot that had

already been sold to someone else, and placed the decedent into a plot that was

already occupied by another.

To state a negligence claim, Plaintiffs must show: (1) defendant owed a duty of

care, (2)  that duty was breached, (3) Plaintiffs were injured, and (4) defendant's breach

caused Plaintiffs' injuries. *Henry v. Dow Chem. Co.* 473 Mich. 63, 71-72 (2005).

Neither Plaintiffs nor Netherlands offered an analysis of the elements of negligence or

offered any legal support for their arguments for and against coverage.

Plaintiffs do allege a claim for damages which accrued during the policy period.

However, Netherlands says even if a claim accrued during the policy period, exclusion

j(6) located in Coverage A, bars coverage:

Exclusions – this insurance does not apply to:

J.    Damage to Property

(6)    That particular part of any property that must be restored, repaired
or replaced because "your work" was incorrectly performed on it.

Definitions section 22 defines "your work" as:

a.    Means:

(1)    Work or operations performed by you or on your behalf; and
(2)    Materials, parts or equipment furnished in connection with such
work or operations.

b.    Includes:

(1)    Warranties or representations made at any time with respect to the
fitness, quality, durability, performance or use of "your work", and
(2)    The providing of or failure to provide warnings or instructions.

The Court reads this section of the policy to mean that there is no coverage for

property damage (loss of use of the vault) that results from incorrectly performed work.

If the cemetery committed an error, it was selling the family a burial plot that had already

been sold to someone else.  The Cemetery did not fail to render a professional service;

they sold the family a burial plot, and, in doing so, did the work incorrectly.

13

The j(6) exclusion applies, and precludes coverage for Plaintiffs' property damage claim.

**H.      No Coverage for Interference with the Right of Burial of Human Remains – Claim Accrued Outside the Policy Period**

Plaintiffs allege a cause of action for interference with the right of burial of human remains.

This cause of action measures damages by the mental anguish or humiliation suffered by plaintiffs denied the comfort of knowing the deceased has been given a comfortable and dignified resting place.  *Allinger v. Kell*, 102 Mich.App. at 810. "Recovery in such cases is not for the damage to the corpse as property, but damage to the next of kin for infringement of his right to have the body delivered to him for burial without mutilation." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1116 (6th Cir. 1995), *quoting Keyes v. Konkel*, 119 Mich. 550, 551 (1899).  The purpose behind this property right is to give possession of the body to the next of kin for burial and to prevent mutilation.  *Id.* at 1114.

Since damages are based on the mental anguish suffered from not receiving the body, as opposed to recovery for damage to the body, Plaintiffs' claim that they should be compensated for the physical injury to the body – its loss – is without merit.

Accordingly, Plaintiffs' claim for emotional distress damages is foreclosed because this claim did not accrue until the Plaintiffs learned of the alleged mishandling on March 11, 2009.

**I.      No Coverage for Mental Distress Damages Arising out of Breach of Contract – Claim Accrued Outside the Policy Period**

14

Plaintiffs say coverage exists for breach of any contract to provide funeral services.

As a general rule, emotional distress damages are not available for breach of contract.  The damages recoverable are those that "arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 414 (1980).  Some courts have created an exception if the contract is so personal in nature that a breach will necessarily result in mental anguish, pain, and suffering.

The Court needs not address whether mental distress damages are available for breach of a burial contract; any such claim - if it exists - accrued outside of the policy period.

Plaintiffs only have coverage under the policy if they can allege a theory of recovery that falls within the policy.  Here, Plaintiffs' allegation that they experienced mental anguish as a result of breach of contract fails because they did not discover the alleged mistake until March 11, 2009.

**J.     No Coverage Under the Policy for Intentional Acts of the Insured**

Coverage for Plaintiffs' claims of intentional infliction of emotional distress and fraud are barred; the policy does not cover intentional acts.

Under the Endorsement, "all acts or omissions in the furnishing of these services . . . will be considered one "occurrence."  The policy defines occurrence as an accident, expressly excluding intentional actions of the insured.  See *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*, 2003 WL 23218046 at *10 (holding that when policy defines "occurrence" as an "accident", the policy expressly and by implication excludes

15

intentional actions of the insured).  Furthermore, even if Plaintiffs could recover under the policy, a claim of intentional infliction of emotional distress is barred because it could not accrue until Plaintiffs learned of the alleged mistake and experienced the emotional distress.  *Id.* at \*11.

Similarly, there is no coverage for Plaintiffs' claims of fraud because one of the elements of fraud is the Defendant's intent.  The elements of fraud are: (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act upon it, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff suffered damage.  *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976).

### K. Plaintiffs Fail to Allege a Theory of Recovery for Violation of the Michigan Consumer Protection Act ("MCPA")

In the Verified Complaint, Plaintiffs allege violations of the following provisions of M.C.L. 445.903 Sec. 3(1):

(a)   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(m)   Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

(n)   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

(q)   Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

16

(s)    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(v)    Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

Netherlands says the statutory claim did not accrue until Plaintiffs discovered the alleged misplaced body.   Netherlands says these claims are barred because they fall outside of the policy period.  Even if they did accrue within the policy period, Netherlands says these claims do not meet the coverage definitions for "bodily injury" or "property damage."

Neither party addressed the statutory claim in their briefs.  The Court ordered supplemental briefs on this issue; neither party submitted any legal authority in support of their sparse arguments.

Even though Netherlands has the burden to show there is no coverage, the Plaintiffs must still allege a theory of recovery.  In their reply to Netherlands supplemental brief, Plaintiffs say the violation of the MCPA does not meet the definition of property damage or bodily injury, and the claim is based solely on the contention that Plaintiffs were injured due to the mishandling of the body.  As discussed, there is no recovery for mishandling of the body.  (See discussion on interference with the right of burial). Damage is only for mental anguish suffered by the family as a result of mishandling, and any claim under that theory is foreclosed because it accrued outside of  the policy period. Therefore, Plaintiffs fail to allege a theory of recovery under the policy regarding the MCPA.

**L.      Plaintiffs' Two Theories to Extend Policy Period Are Unpersuasive**

Plaintiffs offer two arguments in support of their argument that extending the end date of the policy should be extended.  Neither argument is persuasive.

First, Plaintiffs say, without citing authority, that coverage extends beyond the policy termination date when a "bodily injury" or "property damage" occurs during the policy and is known by an employee.  Plaintiffs say that the employee who lost the body during the coverage period had knowledge that an injury occurred, and this knowledge is imputed to the insured and therefore coverage is created "beyond the policy period." Plaintiffs say this interpretation is supported by a plain reading of Section 1 – Coverages, (1)(b)(3).

Plaintiffs misconstrue the policy.  This section of the policy says there is no coverage for claims that happen prior to the policy period that are known by an insured or authorized "employee."  Accordingly, a claim arising before the policy period began but which continues after coverage begins, is deemed to have occurred before the beginning of the policy and there is no coverage.  Contrary to what the Plaintiffs argue, this section of the policy does not pertain in a situation such as this to extend the effective date of the policy.

Secondly, Plaintiffs say Netherlands failed to raise certain exclusions as a defense in their initial denial letter, and therefore should be estopped from asserting it now.  Plaintiffs cite *Kirchner  v. Process Design Assoc. Inc.*, 459 Mich. 587, 593 (1999) for the proposition that once an insurance company denies coverage and stated its defenses, it is estopped from asserting new defenses.  *Id.*

The case does not support Plaintiffs' position.  The Court in *Kirchner* found the

18

insurer was not estopped from enforcing a policy exclusion against the plaintiffs.  The

Michigan Supreme Court stated that "applying the doctrines of waiver and estoppel to

broaden the coverage of a policy would make a contract of insurance cover a loss it

never covered by its terms, to create a liability not created by the contract and never

assumed by the defendant under the terms of the policy." *Id.* at 594.

The *Kirchner* court did say there are limited instances where courts have applied

waiver and estoppel to bring risks within coverage that were not initially covered by the

policy.  *Id.*  The Court gave two examples: (1) the insurance company misrepresents the

terms of the policy to the insured; (2) the insurance company  undertakes the defense of

the insured without reserving the right to deny coverage.  *Id.*  Neither of these scenarios

is applicable here.  The parties do not offer any arguments that Netherlands

misrepresented the policy to the insured.  Furthermore, Netherlands never offered to

undertake the defense of Mikocem.  In its first denial letter, Netherlands reserved the

right to bring additional defenses.  In its second denial letter, Netherlands raised the

issue of exclusions.

Plaintiffs' arguments regarding an extension of the end date of the policy are

unavailing.

### M.    No Ambiguity between Endorsement and Exclusion

Plaintiffs say that the Endorsement provides coverage for "property damage"

arising out of failure to render professional services, and the exclusion takes this

coverage away, creating an ambiguity which should be resolved in favor of the insured.

The Court disagrees.

The court must look at the contract as a whole and give meaning to all of its

terms. *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 694 (1982). Exclusionary clauses in insurance policies are construed strictly in favor of the insured. *Auto-Owners Ins. Co. v. Churchman, 440 Mich. 560, 567 (1992) citing Shelby Mut. Ins. Co. v. United States Fire Ins. Co.*, 12 Mich.App. 145, 149 (1968). "[C]overage under the policy is lost if any one exclusion is applicable to the claims at issue." *Fresard*, 414 Mich. at 695. "Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume*." Auto-Owners Ins. Co. v. Churchman, 440 Mich. at 567, citing Kaczmark v. La Perriere*, 337 Mich. 500, 506 (1953).

The Court finds that the Endorsement and the Exclusion do not conflict; when read as a whole, the Exclusion does not eliminate all coverage arising out of the Endorsement. The wording of the Exclusion and the Endorsement is clear and unambiguous.

## V.      CONCLUSION

The Court declares the policy does not cover any of Plaintiffs' claims: (1) Plaintiffs' property damage claims are barred by policy exclusions, (2) Plaintiffs' claims for bodily injury are barred because they fall outside of the policy period, (3) Plaintiffs' claim of interference with the burial of human remains is similarly barred; Plaintiffs could not have suffered damages until after the policy expired, (4) claims for emotional distress and fraud are precluded because the policy does not provide coverage for intentional acts, (5) claims for violation of the MCPA fail; Plaintiffs do not allege a theory of recovery that falls within the policy, (6) arguments regarding an extension of the policy period are unavailing, and (7) Plaintiffs' contract and negligence claims for burying the body in the

20

wrong place are precluded by the Exclusion.

Finally, when read as a whole, the contract is unambiguous and must be enforced as written.

Netherlands' Motion for Summary Judgement is **GRANTED**.  Netherlands' request for costs is **DENIED**.

**IT IS ORDERED.**


  /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 16, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 16, 2012.

S/Linda Vertriest
Deputy Clerk

21